IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NATIONAL CENTER FOR                                    Civil No. 01-3056-HO
CONSERVATION AND SCIENCE
POLICY, an Oregon nonprofit                            ORDER
corporation,

                    Plaintiffs,

       v.

UNITED STATES FOREST SERVICE,

                  Defendant,

<u>Background</u>

Plaintiff National Center for Conservation Science and
Policy (NCCSP), formerly Headwaters, Inc., filed suit challenging
the Beaver Newt and Silver Fork Timber sales in the Rogue River
National Forest, now the Rogue River-Siskiyou National Forest.
Plaintiff later dropped its challenge of the Silver Fork timber
sale.  After finding plaintiff in privity with the plaintiffs in
<u>Klamath Siskiyou Wildlands Center v. United States Forest
Service</u>, civil no. 01-3018-HO (D. Or.) and <u>American Lands</u>

Alliance (ALA) v. Williams, civil no. 99-697-AA (D. Or.), this
court held the complaint barred by the doctrine of res judicata.
"The doctrine of res judicata provides that a final judgment on
the merits bars further claims by parties or their privies based
on the same cause of action . . ." In re Schimmels, 127 F.3d
875, 881 (9th Cir. 1997).  The court of appeals reversed and
remanded "for full consideration of the [res judicata] question .
. . after an opportunity for full briefing and argument and for
appropriate factual development." Headwaters, Inc. v. United
States Forest Svc., 399 F.3d 1047, 1056-57 (9th Cir. 2005).  The
parties engaged in discovery and defendant filed a motion to
dismiss/alternative motion for summary judgment based on the res
judicata effect of the judgment in the ALA case.

     The court and the parties agree that the case at bench
shares an identity of claims with the ALA and Klamath-Siskiyou
cases, and that there was a final judgment on the merits in the
ALA case.  Headwaters, 399 F.3d at 1052.  Thus, the only element
of res judicata in dispute is privity between NCCSP and the
plaintiffs in the ALA case.

     Plaintiff filed a motion for order striking exhibits
submitted with defendant's reply memorandum and portions of the
memorandum referring to the exhibits.  In the alternative,
plaintiff sought leave to file a sur-reply to respond to the new
evidence.  At oral argument, the court granted plaintiff leave to

2 - ORDER

file a sur-reply.  The motion to strike/alternative motion to
file sur-reply is denied as moot.

   Notwithstanding the voluminous evidence produced by the
government, privity between plaintiff and the plaintiffs in the
ALA case is not established.  Plaintiff's claims are not
precluded.  Defendant's motion to dismiss/alternative motion for
summary judgment is therefore denied.

Discussion

   In this case, the defense of res judicata is not established
by the pleadings.  The defense is appropriately raised by summary
judgment motion.  Sassower v. Abrams, 833 F.Supp. 253, 264 n. 18
(S.D.N.Y. 1993).  Summary judgment is appropriate if there are no
disputed issues of material fact and the moving party is entitled
to judgment of law.  Fed. R. Civ. P. 56(c).

   Defendant argues that plaintiff is in privity with ALA and
KS-Wild, co-plaintiffs in the ALA case.  Defendant contends that
plaintiff had a traditional privity relationship with ALA because
plaintiff is a member of ALA, and in the alternative, ALA and/or
KS-Wild served as plaintiff's "virtual representative" in the ALA
case.

I.  Undisputed Facts

   The court initially notes that defendant objects to
plaintiff's affidavits on the ground that the affiants are not
qualified to speak for organizations.  Defendant cannot prevail

under the most favorable view of its evidence.[1]  The court therefore does not address plaintiff's evidence and defendant's objections.  Except where noted, the following facts are either undisputed by the parties or not reasonably susceptible to dispute based on the evidence.

On November 19, 1975, Charles Christopher Bratt and others founded Headwaters Community Association, Inc., subsequently renamed Headwaters, Inc., and thereafter, National Center for Conservation Science and Policy.

On May 15, 1991, Headwaters, Inc. adopted bylaws stating, "[t]he purpose of the organization is to identify and protect critical watershed lands in Southern Oregon and to represent the interests of local citizens whose lives are impacted by any activity on these forest lands."

World Wildlife Fund, Inc. is a Delaware non-profit corporation incorporated on May 28, 1991.  ALA formerly named Western Ancient Forest Campaign and Western Conservation Federation, is an Oregon non-profit corporation formed on August 5, 1991.

Defendant contends that ALA, Headwaters and other environmental organizations held annual conferences at Southern Oregon University in Ashland, Oregon.  Plaintiff contends that

---

[1]Defendant did not submit affidavits or declarations authenticating its exhibits.  Plaintiff registered no objection on this basis.

4 - ORDER

Headwaters was responsible for the organization and operation of the annual conferences.  Defendant's evidence states that Chant Thomas, a Headwaters researcher and educator, coordinated the design and content of the annual Western Forest Activists Conference at Southern Oregon University from 1992-2000. Plaintiff cites to no evidence.

Rogue Environmental Incorporated (REI), filed incorporation documents on November 29, 1993.  Defendant contends without citation to evidence that REI operated the Headwaters' Environmental Center in Ashland, Oregon.

Headwaters's executive director Tonya Graham identified state and national level organizations as occasional or frequent allies of Headwaters in areas related to forest management.  The organizations are Oregon Natural Resources Council, Umpqua Watersheds, Gifford Pinchot Task Force, Siskiyou Project, Soda Mountain wilderness Council, Rogue Group Sierra Club, North Coast Environmental Center, Klamath Forest Alliance, Klamath Siskiyou Wildlands Center (KS-Wild), World Wildlife Fund, the Wilderness Society and ALA.

Headwaters contributed $250 to ALA's 2005 operating budget.

Some of the organizations identified by Graham as frequent or occasional forest management allies of Headwaters have sponsored Headwaters's annual conference.

An ALA webpage accessed in 2005 lists Headwaters, KS-Wild

and other organizations as "local groups."  Christopher Bratt testified that he believed Headwaters was a member of ALA.

The Sixth Annual Western Ancient Forest Activists Conference was held at Southern Oregon State College in Ashland, Oregon on February 13-17, 1997.  On February 13, 1997, after opening remarks by Julie Norman and Chant Thomas, Headwaters, and Agnes Tao-Why-Whee Pilgrim, Rogue Band Takilma Tribe, Ms. Norman, served as moderator for a panel discussion entitled "State of the Movement: Activists Speak."

The following people served as panelists for the opening full session of the conference: Julie Norman, Headwaters; Steve Holmer, Western Ancient Forest Campaign a/k/a ALA; Alexia Kelly, Earth Conscious Youth; Susana Santos, Tygh Tribe; Francis Eatherington, Umpqua Watersheds; Steve Huddleston, Central Oregon Forest Issues Committee; and Felice Pace, Klamath Forest Alliance.

Rick Gwynellan, Headwaters and Jim Jontz, Western Ancient Forest Campaign a/k/a ALA presented a breakfast discussion on the topic: "Corporations, the Global Economy and the Environment."

A session called "Election Review and Planning Political Strategy" was led by Rick Gwynellan, Headwaters; Marty Hayden, Sierra Club Legal Defense Fund; Connie Stewart, Northcoast Environmental Center; Chad Hanson, Earth Island Institute; and Jim Jontz, Western Ancient Forest Campaign a/k/a ALA.

Jessica Hamilton, Western Ancient Forest Campaign a/k/a ALA, Portland, Oregon, led two forums on "Rebuilding Vision and Spirit in Our Movement."

Headwaters belonged to a coalition of regional groups called the Klamath Siskiyou Alliance ("KSA"), which initially included Citizens for Better Forestry, Hayfork, California; Headwaters; Klamath Forest Alliance, Etna, California; Northcoast Environmental Center, Arcata, California; Siskiyou Regional Education Project ("Siskiyou Project"), Cave Junction, Oregon; and later included the World Wildlife Fund and Klamath-Siskiyou Program, Ashland, Oregon.  The collective work of the KSA is to scrutinize the management of the public lands in the Klamath-Siskiyou Mountains to protect water quality, fish and wildlife. The KSA has two major periodicals: Econews, a publication of the Northcoast Environmental Center and Forest News, a publication of Headwaters.

In March 1997, Headwaters used an article in their newsletter to emphasize the organization's opposition to the Forest Service's plans to cut trees with a diameter of 20+ inches DBH.  In the Spring 1997 Forest News, Headwaters's members were encouraged to participate in the June 1st No New Roads Lobby Week in Washington, D.C. which was sponsored by the Western Ancient Forest Campaign a/k/a ALA.  In May 1997, Headwaters's newsletter alerted members to an "illegal" harvest of "oldgrowth

forest" in the Siskiyou National Forest.

In June 1997, the lead story in Headwaters's newsletter was the completion of the World Wildlife Fund's two year mapping project of the "Klamath-Siskiyou region" which was preformed as part of the mapping of North American ecosystems.  The summer 1997 edition of the <u>Forest News</u> focused on forest fires.  In the September 1997 newsletter, members were urged to write Congress to cut the Forest Service's budget for new logging roads.

The fall 1997 <u>Forest News</u> focused on the protection of roadless areas, an aspect of the ALA/Western Ancient Forest Campaign.  The winter 1997-98 <u>Forest News</u> included articles by Jim Jontz, Executive Director, ALA/Western Ancient Forest Campaign, and Headwaters's staff.  The December, 1997 Headwaters newsletter was devoted to the upcoming 1998 Headwaters Conference.

At its December 15, 1997 meeting, Headwaters's board of directors decided to focus on five priorities in 1998: (1) forest ecosystem protection program (forest practices reform and public education); (2) progressive organizing project; (3) environmental leadership training; (4) clean water campaign; and (6) administration and fund-raising.  A majority of the board voted to support the Bratt-Michelsen motion in favor of "zero timber quotas" policy for federal managers instead of the proposed "zero cut" legislation.  At the January 19, 1998

8 - ORDER

meeting, the board approved the hiring of Tom Dimitre (Forest Practices Reform).

The Seventh Annual Western Ancient Forest Activists Conference was held at Southern Oregon State College in Ashland, Oregon on February 13-15, 1998.  After opening remarks by Julie Norman and Chant Thomas of Headwaters, and Agnes Tao-Why-Whee Pilgrim, Rogue Band Takilma Tribe, Ms. Norman served as moderator for a panel discussion entitled "State of the Movement: Forest Protection Campaigns."

The following people served as panelists for the opening sessions: Julie Norman, Klamath Siskiyou Alliance and Headwaters; Steve Holmer, Western Ancient Forest Campaign a/k/a ALA; Bonnie Phillips, Forest Water Alliance; Ken Rait, Oregon Natural Resources Council; Gloria Piccadilly, Dillon Creek Forest Defenders; David Orr, Sierra Club and Earth Island Institute; Scott Hoffman, Sierra Nevada Forest Protection Campaign; Roy Keene, Clearcut Education Campaign; and Janine Blaeloch, Western Lands Exchange Project.  The keynote speaker for the conference was Jim Jontz, Executive Director, Western Ancient Forest Campaign a/k/a ALA.

The Spring 1998 <u>Forest News</u> summarized the events at the 1998 conference.  Tom Dimitre and Robert Brothers of Headwaters reported on Southern Oregon Forest Service and Bureau of Land Management timber sales, including the Beaver Newt Timber Sale.

9 - ORDER

The March 1998 Headwaters newsletter urged opposition to a "Forest Health" bill, and support for a moratorium on Forest Service road building.  A Western Ancient Forest Campaign/ALA article dated April 9, 1997 and posted on the internet urges the 105th Congress to prohibit road-building on the National Forests.

The May, 1998, Headwaters newsletter reported on the April 4, 1998 meeting of the Progressive Coalition of Southern Oregon, a coalition of sixteen labor, environmental and social justice organizations led by Headwaters.

In the summer 1998 edition of Forest News, Tom Dimitre and Robert Brothers of Headwaters reported on a coalition of local conservation groups which challenged timber sales supervised by the BLM, Grant's Pass Resource Area.  Included in the coalition were Deer Creek Valley Natural Resource Conservation Association, Headwaters, KS-Wild, Oregon Natural Resources Council, Rogue Group of the Sierra Club, Siskiyou Project, and Williams Watershed Council.

On July 8, 1998, ALA, California Wilderness Coalition, Citizens for Better Forestry, Gifford Pinchot Task Force, Headwaters, Klamath Forest Alliance, KS-Wild, Northcoast Environmental Center, Northwest Ecosystem Alliance, Oregon Natural Resources Council, Pilchuck Audubon Society, Portland Audubon Society, and Umpqua Watersheds, filed suit against the BLM and the Forest Service.  The plaintiffs challenged

10 - ORDER

implementation of the Northwest Forest Plan (NFP). <u>See</u> <u>Oregon</u>
<u>Natural Resources Council v. United States Forest Svc.</u>, 59 F.
Supp. 2d. 1085 (W.D. Wash. 1999).

Headwaters's August 1998 newsletter highlighted the Twelfth
Annual National Forest Reform Rally in Freedom, New Hampshire.
ALA, Forest Reform Network, Green Mountain Forest Watch, RESTORE:
The North Woods, and Sierra Club organized the event.  Steve
Holmer of ALA reminded activists that the "Western Ancient Forest
Campaign is now American Lands, reflecting our work with citizens
nationwide to protect America's wildlife and wild places."

In the Fall 1998 edition of Forest News, Tom Dimitre and
Robert Brothers reported on FS/BLM timber sales, including the
Beaver Newt timber sale.

Minutes of the September 18, 1998 Headwaters board of
directors meeting reflect that Tom Dimitre reported to the board
on the "new Southern Oregon Forest Coalition."  Minutes of the
October 4, 1998 directors' meeting reflect a staff member's
report that the "Ashland Watershed Stewardship Alliance is
evolving."

On November 12, 1998, KS-Wild, submitted an administrative
appeal of the Forest Service's decision to approve the Beaver
Newt timber sale.  On November 14, 1998, Headwaters, submitted a
nearly identical administrative appeal of the Forest Service's
decision to approve the Beaver Newt Timber Sale.

Tom Dimitre signed Headwaters's administrative appeal of the Beaver Newt Timber Sale.  Dimitre testified that from time to time he might e-mail a draft administrative appeal for comments, and that Jay Lininger of KS-Wild is a person to whom Dimitre might possibly send a draft.

Headwaters hired Dimitre as forest watch coordinator prior to the January 19, 1998 board of directors meeting.  Dimitre formerly served as the Klamath Forest Alliance's forest watch coordinator.  Headwaters let Dimitre go when it experienced financial problems around October and November 1999.  KS-Wild subsequently hired Dimitre.

Defendant's interrogatory # 9 sought the explanation as to why similar or identical language appeared in the administrative appeals to the Bear Newt timber sale filed by Headwaters and KS-Wild.  Headwaters's response states,

> This Interrogatory notes that points raised in the Headwaters appeal are similar to those found in the Klamath Siskiyou Wildlands Center appeal.  Current Headwaters' conservation staff were not involved in drafting the November 14, 1998 Headwaters' appeal and have no personal knowledge of whether the quoted language was taken from the Klamath Siskiyou Wildlands appeal or vice versa.

Headwaters's December 1998 newsletter announced the Eighth Annual Western Ancient Forest Activists Conference planned for February 5-7, 1999 at Southern Oregon University in Ashland.

On January 21, 1999, ALA, Cascadia Wildlands Project, League of Wilderness Defenders, Oregon Wildlife Federation, Santiam

12 - ORDER

Watershed Guardians, Friends of Breitenbush Cascades, Gregory
Dyson and John Rancher filed a lawsuit challenging twenty-one
timber sales in the Mt. Hood and Willamette National Forests.
American Lands Alliance v. United States Forest Service, No.
99-80-KI (D. Or.).

The Eighth Annual Western Ancient Forest Activists
Conference was held at Southern Oregon State College in Ashland,
Oregon on February 5-7, 1999. After opening remarks by Robert
Lonsdorf and Chant Thomas of Headwaters, and Agnes "Tao-Why-Wee"
Pilgrim, Rogue Band Takilma Tribe, activists reported on the
"State of the Movement- Forest Protection Campaigns."

The following people served as presenters at the opening
session: Chant Thomas, Headwaters; Steve Holmer, ALA; Julia
Butterfly Hill, independent activist; Susan Bower, Citizens for
Better Forestry; Donovan Gray, Arts Network of Washington State;
Tom Lillebo, Oregon Natural Resources Council; Sarah Balster,
Mattole Restoration Council; and Roy Keene, Public Interest
Forestry.

On February 6, 1999, Steve Holmer of ALA, Jim Ince of
Headwaters and Umpqua Watersheds, Mat Jacobson of Greenpeace
Forest Campaigns and Felice Pace of Klamath Forest Alliance led a
program entitled "Partnering to Save the Best of What's Left: The
Challenge of 'Singleness of Purpose.'" The program description
states:

13 - ORDER

What makes the most sense for a cooperative working
relationship among groups committed to ending the
logging of Ancient Forests in the Pacific Northwest?
American Lands has proposed a campaign to complement
ongoing legal and administrative strategies by
organizing public and political support for an end to
old growth logging.  Who is interested in joining such
a campaign and what other approaches might be needed?

The March 1999 Headwaters' newsletter encouraged members to
come to an open house on March 12, 1999 at the Headwaters
Environmental Center to "find out what's happening with ongoing
Headwaters' campaigns as well as projects that were activated
by the conference."

On May 13, 1999, ALA, League of Wilderness Defenders, Oregon
Wildlife Federation, Santiam Watershed Guardians, Friends of
Breitenbush Cascades, KS-Wild, Gregory J. Dyson, and John Rancher
filed suit to challenge several timber sales including, Beaver
Newt Timber Sale, Rogue River National Forest.  American Lands
Alliance v. U.S. Forest Service, No. 99-697-AA (D. Or., filed May
13, 1999, dismissed with prejudice, Dec. 16, 1999).

The amended complaint filed in the American Lands Alliance
case describes ALA as "a nonprofit coalition of member-based
organizations," which "provides advocacy and other services to
local, state, and regional forest conservation groups and works
to improve communication and coordination among these groups and
other societal institutions."  The amended complaint describes
League of Wilderness Defenders (LOWD) as a non-profit Oregon
corporation which provides fiscal sponsorship to grassroots

14 - ORDER

projects and organizations in Oregon.  Two LOWD projects are
Cascadia Wildlands Project and Klamath-Siskiyou Wildlands Center.

Oregon Wildlife Federation (OWF) is a former affiliate of
the National Wildlife Federation founded in 1936.  OWF formed
Witness Against Lawless Logging (WALL) in response to the 1996
Salvage Rider which allowed timber sales in addition to those
permitted under the 1994 Northwest Forest Plan.

The amended complaint in the ALA case describes Santiam
Watershed Guardians as a public interest association with an
office in Salem, Oregon.  Friends of Breitenbush Cascades (FBC)
is described as a nonprofit environmental organization founded in
1986 to monitor timber sales.  Michael Donnelly founded both
organizations.

The amended complaint in the ALA case alleges that KS-Wild
is a project of League of Wilderness Defenders.

The amended complaint filed in ALA alleges that Gregory J.
Dyson and John Rancher live in Portland, Oregon and enjoy and use
the Mt. Hood National Forest.  Defendant contends that Dyson is a
lawyer and co-founder of BARK, an organization dedicated to
preserving Mt. Hood National Forest.

Headwaters's summer 1999 Forest News focused on unprotected
wild lands and featured an article by Jay Lininger of the
Klamath-Siskiyou Wildlands Center.  The article urged readers to
contact the Defenders of Wildlife, which funded a study by the

15 - ORDER

Conservation Biology Institute on the feasibility of the reintroduction of wolves in the Klamath-Siskiyou Bioregion to support the wolf recovery campaign.

A letter dated July 22, 1999 reflects that World Wildlife Fund awarded a $ 96,000 grant to Headwaters for its "Klamath-Siskiyou Project," an apparent reference to Headwaters's Klamath-Siskiyou Organizing Initiative.  See Def's ex. 65.

On August 26, 1999, Judge Dwyer issued a preliminary injunction against the Forest Service and BLM for the agencies's failure to comply with the survey and management requirements of the Northwest Forest Plan.  This was a favorable ruling for Oregon Natural Resources Council Action, Pilchuck Audubon Society, Klamath Forest Alliance, Klamath Siskiyou Wildlands Center, California Wilderness Coalition, ALA, Umpqua Watersheds Inc., Northcoast Environmental Center, Audubon Society of Portland, Citizens for Better Forestry, Gifford Pinchot Task Force, Northwest Ecosystem Alliance, and Headwaters.

Headwaters's February 2000 newsletter focused on the upcoming Ninth Annual Western Forest Activists Conference. Headwaters sponsored the Ninth Annual Western Forest Activists Conference at Southern Oregon State College in Ashland.  After opening remarks by Chant Thomas of Headwaters and Agnes "Tao-Why-Wee" Pilgrim, Rogue Band Takilma Tribe, activists reported on the "State of the Movement: Successes in Forest

Protection 1999.  The conference included the following

presentations and presenters:

> *Moderator Chant Thomas of Headwaters;
> *Legal Successes: Umpqua Trout, Survey & Manage, Silver
> Creek Mining - Lori Cooper, Siskiyou Regional Education
> Project;
> * Roadless Areas Arrive on the Political Map - Mat
> Jacobson, Heritage Forest Campaign [Greenpeace Forest
> Campaigns]:
> * Meeting the WTO in Seattle - Wes Brain, Progressive
> Coalition of Southern Oregon;
> * Alliance for Sustainable Jobs and the Environment -
> United Steel Workers of American Local 338;
> * Plum Creek Timber: Forest Service's Watch Mountain
> Land Exchange - Sarah Vekasi, Olympia Earth First!
> * Boycott Old-Growth Lumber Campaign Got Home Depot! -
> Jen Krill, Rainforest Action Network;
> * Where is Industry's P.R. Pointed? - Roy Keene, Public
> Interest Forestry;
> * Brave Activists Living in Trees Take Our Issue
> Everywhere -  Thunder, Winberry Tree Village, Blanket
> Creek Watershed.

On August 31, 2000, Headwaters's board of directors met to

reorganize after former Executive Director Rick Gwynallen

misappropriated the organization's funds.  The Board adopted the

following core program:  forest practices - track and monitor

current, on-going, and developing timber sales and agency

projects, create a technical assistance team and work with

regional watershed councils to protect private and public lands;

forest protection - participate in wilderness/roadless programs,

assume responsibility locally, join and support regional and

national alliances, support statewide wildlands programs, ancient

forests and region-wide forest protection; clean water campaign -

educate public on "TID lawsuit decision," continue to support the

Ashland Watershed Stewardship Alliance and the Ashland Watershed Protection Program.

The board stated that the core program would be implemented "if we can obtain sufficient funding to implement the plan."

Jay Lininger of KS-Wild attended the Headwaters board of directors meeting on December 11, 2000. Mr. Lininger "introduced himself and the program to the board and invited everyone to an open house Friday 12/15/90 [sic]," and then left the meeting.

At the January 29, 2001 meeting of the Headwaters Conservation Committee, Chris Bratt presented a letter from Jay Lininger on small diameter wood. The committee agreed to ask Mr. Lininger to draft a joint letter from KS-Wild and Headwaters on this topic. Mr. Bratt testified at deposition that Headwaters and KS-Wild are "sister organizations."

On February 21,2001, KS-Wild sued the Forest Service to challenge the Beaver Newt and Silver Fork timber sales. Klamath Siskiyou Wildlands Center v. United States Forest Service, No. 01-3018-HO (D. Or.) (dismissed, July 21, 2001). Siskiyou Regional Education Project attorney Lori J. Cooper represented KS-Wild. Ms. Cooper was formerly employed by the Klamath Forest Alliance from 1996 to 1998, and worked for the Siskiyou Regional Education Project from 1998 until 2004. Ms. Cooper shared office space with Brenna Bell, an attorney employed by KS-Wild. Ms. Cooper testified that she served on the board of directors of KS-

Wild for a period of not more than two years, sometime between 1999 and 2003.

George Badura, Joe Vale, Chant Thomas, Chris Bratt, Tonya Graham and Lori Cooper were present at the March 12, 2001 meeting of the Headwaters Conservation Committee.

The April-May 2001 <u>Headwaters News</u> highlighted the upcoming 2001 Forest Activists Conference at Southern Oregon University, sponsored by the Ecology Center of the Siskiyou (ECOS).

Minutes of the April 9, 2001 Headwaters Conservation Committee meeting state, "[a] handout is being prepared with letters to the Forest Supervisor written by [World Wildlife Fund] and KS-Wild which can act as guides for our questions to Sue Kupillas when she visits in May."

Under the heading "Spencer Lomas-Appleseed Project," minutes of the April 16, 2001 Conservation Committee Meeting state,

> Headwaters missed the deadline on this but it is being
> appealed by other groups.  The issues are Cumulative
> Impacts and ORVs.  Headwaters could still become
> involved.  The committee recommends to the Board that
> we do stay involved with no money.  Lori Cooper of
> Siskiyou Project is the attorney.

Def's ex. 84.

Headwaters asserted in response to an interrogatory that on or about May 24, 2001, the organization retained Lori Cooper, Siskiyou Project attorney, to represent the organization in this case.  Def's ex. 91 at 27-1.  Lori Cooper testified that she communicated with Chris Bratt of Headwaters about representing

19 - ORDER

Headwaters in this case.  Ms. Cooper testified that she was not
retained by Headwaters until early July 2001.  On cross
examination, Ms. Cooper testified it was possible that Mr. Bratt
contacted her earlier, after the government filed its motion to
dismiss in the Klamath Siskiyou case, civil number 01-3018-HO.
The government filed a motion for judgment on the pleadings in
the Klamath Siskiyou case on May 21, 2001.

        The June-July 2001 Headwaters News reported that Headwaters,
Jackson County Citizens League, Rogue Group Sierra Club, Rogue
Valley Audubon, KS-Wild, Ecology Center of the Siskiyous
("ECOS"), and the Media Center at Southern Oregon University,
would sponsor a global warming presentation on June 14, 2001.
The newsletter urged forest activists to go to Washington, D.C.
to join the Wildlands Defense Lobby Week (June 3-8, 2001)
sponsored by the ALA.

        On July 2, 2001, this court dismissed the Klamath Siskiyou
case, civil number 01-3018-HO, challenging the Beaver Newt timber
sale.  On July 5, 2001, Headwaters, represented by Lori Cooper,
filed the instant case challenging the Beaver Newt timber sale.

        This court entered judgment dismissing the instant case with
prejudice on July 26, 2001.

        Headwaters staff member Derek Volkart reported at the August
15, 2001 meeting of the board of directors that Lori Cooper
"considered this a bad decision and wants to take it to the 9th

20 - ORDER

Circuit."  Def's ex. 87.  Meeting minutes further reflect that there will be a meeting on August 16, 2001 at "Chris Bratt's house to discuss further legal strategy."

On November 12, 2001, Derek Volkart reported to Headwaters Conservation Committee that Lori Cooper "is afraid of being sanctioned for taking cases to court that have already been thrown out of court in the past."  The meeting minutes further reflect that it may by too late for Headwaters to withdraw its case for Lost Creek.  Def's ex. 88.

Ms. Cooper testified that she knew Derek Volkart.

An appendix to a 2001 academic paper posted on the internet reports that ALA is a national organization serving environmentalists, grassroots groups and activists, ALA has 214 members, and ALA receives zero percent income from government. ALA's tax returns indicate that representatives of ALA "members" serve on ALA's board of directors.

II.  Traditional Privity Relationship

> Privity, traditionally, arose from a limited number of
> legal relationships in which two parties have identical
> or transferred rights with respect to a particular
> legal interest, chiefly: co-owners and co-tenants of
> property; decedents and their heirs, successors in
> interest and survival claimants; bailors and bailees;
> joint obligees; assignors and assignees; parties to a
> contract, and in some cases promisees and third-party
> beneficiaries; indemnitors and indemnitees;
> corporations and their officers or shareholders;
> partners and their partnerships; and unincorporated
> associations and their members.

Headwaters, 399 F.3d at 1053 (citing to Restatement (Second) of

21 - ORDER

Judgments, §§ 43-61 (1982) and Fed. R. Civ. P. 23.2).

Defendant argues that plaintiff is in a traditional privity relationship with ALA because plaintiff is a member of ALA. Defendant relies on the following facts in support of this argument; (1) Headwaters's 2000 bylaws state that the corporation shall, inter alia, "[a]dvocate for a permanent forest and watershed reserve system, including wilderness protection or other appropriate designation of roadless areas," and "[c]arry out these purposes through public education and through available legislative, administrative and judicial processes[];" (2) Headwaters allied itself with several organizations, including ALA; (3) Headwaters contributed $250 to ALA's operating budget; (4) ALA and KS-Wild made donations for Headwaters's annual conference; (5) Headwaters is a member organization of ALA; and (6) the amended complaint in the ALA case alleges that ALA "seeks to strengthen grass-roots conservation groups," "provides advocacy and other services to local, state and regional forest groups," and "has members who have used, do use and continue to use the Siskiyou Rogue River, Mt. Hood, and Willamette National Forests[.]"

Plaintiff refers to ALA as a coalition of organizations, while defendant contends that ALA is an organization comprised of its member entities.  Assuming that NCCSP is a member of ALA, a traditional privity relationship is not thereby established.

22 - ORDER

Members or shareholders and the corporations to which they belong
are in privity only in certain circumstances.  Headwaters, 399
F.3d at 1053.  "A judgment in an action to which a corporation is
a party has no preclusive effects on a . . . member of a non-
stock corporation . . ." unless (1) there is an agency
relationship between the corporation and member, (2) the member
sues derivatively on behalf of the corporation in the subsequent
action, (3) the corporation is closely held and the owner
participated in the prior action (and certain exceptions do not
apply), or (4) the member is found to be the alter ego of the
corporation and the member receives notice and an opportunity to
defend the action resulting in judgment.  Restatement (Second) of
Judgments § 59.  There is no evidence that any of these
circumstances exist.  Additionally, due process requirements
preclude a traditional privity relationship where the party in
the first law suit did not adequately represent the nonparty.
Kourtis v. Cameron, 419 F.3d 989, 997, n. 5 (9th Cir. 2005);
Headwaters, 399 F.3d at 1054.  As discussed below, ALA did not
adequately represent plaintiff in the ALA case.

III.  Virtual Representation

> Recent cases apply the privity concept in a . . .
> flexible manner . . . , and courts have found the
> existence of privity in an array of disparate
> circumstances summarized under the heading of "virtual
> representation."  The case law applying the virtual
> representation doctrine has been appropriately
> characterized as episodic and lacking any clear
> pattern, and it is therefore difficult to distill a

23 - ORDER

> generally applicable framework from the relevant
> precedent. Nevertheless, those relationships that
> courts have deemed sufficient to give rise to virtual
> representation do share certain features: a close
> relationship, substantial participation, and tactical
> maneuvering all support a finding of virtual
> representation; identity of interests and adequate
> representation are necessary to such a finding.

Kourtis, 419 F.3d at 996 (citations and quotations omitted).

Adequate representation is a due process prerequisite to precluding a litigant from his day in court if he was not a party to the earlier litigation. Headwaters, 399 F.3d at 1054. Adequate representation requires notice to the nonparty that the party in the earlier litigation intended to represent the nonparty, and that the court hearing the first case took care to protect the interests of the nonparty. Id. (citing to Richards v. Jefferson County, 517 U.S. 793, 799, 802 (1996)).

Defendant's evidence generally demonstrates that plaintiff, ALA and KS-Wild may collaborate to further a mutual cause, movement or campaign of what they may describe as forest protection. Defendant does not point to evidence that ALA or KS-Wild notified plaintiff that either group intended to represent plaintiff in the ALA case. There is no evidence that Judge Aiken considered Headwater's interests before dismissing the ALA case with prejudice, based on stipulation of the parties. Though plaintiff and KS-Wild filed identical or nearly identical administrative challenges to the Bear Newt timber sale, "parallel legal interests alone, identical or otherwise, are not sufficient

24 - ORDER

to establish privity, or to bind a plaintiff to a decision
reached in another case involving another plaintiff."
Headwaters, 399 F.3d at 1054.

    To support its virtual representation argument, defendant
relies on Irwin v. Mascott, 370 F.3d 924 (9ᵗʰ Cir. 2004).
Defendant argues that the Irwin court held that a corporation
virtually represented its officer in prior litigation even though
the officer did not control or participate in the prior
litigation.  Reply at 7.  But the court found that the officer
participated fully in the prior litigation against the
corporation.  Id. at 930-931.  This fact, and the fact that
plaintiff is not an officer of ALA or KS-Wild, distinguishes the
case at bench from the Irwin case.

    NCCSP, formerly Headwaters, was not in a traditional privity
relationship with the plaintiffs in the ALA case, civil number
99-967-AA (D. Or.).  ALA and KS-Wild did not virtually represent
Headwaters (nka NCCSP) in that case.  The ALA case therefore does
///

///

///

///

25 - ORDER

not preclude plaintiff from prosecuting the case at bench.

<u>Conclusion</u>

Based on the foregoing, defendant's motion to dismiss/alternative motion for summary judgment [#43] is denied; plaintiff's motion to strike [#72] is denied as moot.

IT IS SO ORDERED.

DATED this <u>28th</u> day of June, 2007.


<u>s/ Michael R. Hogan</u>
United States District Judge